**ORAL ARGUMENT REQUESTED**

**CASE NO. 17-7075**

_____

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

PALETERIA LA MICHOACANA, INC., et al.

_Plaintiffs-Appellees._

v.

PRODUCTOS LACTEOS TOCUMBO S.A. de C.V.

_Defendant-Appellant,_

_____

Appeal From The United States District Court,
District of Columbia, Case No. 1:11-cv-01623-RC
The Honorable Rudolph Contreras

_____

# BRIEF OF APPELLEES

_____

| | |
|---|---|
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| Laura L. Chapman | Paul Werner |
| Toni Qiu | 2099 Pennsylvania Avenue, NW, |
| Four Embarcadero Center, 17th Floor | Suite 100 |
| San Francisco, California 94111-4109 | Washington, DC 20006-6801 |
| Telephone: 415.434.9100 | Telephone: 202.747.1900 |
| Facsimile: 415.434.3947 | Facsimile: 202.747.1901 |
| E-Mail: lchapman@sheppardmullin.com | E-Mail: pwerner@sheppardmullin.com |
| tqiu@sheppardmullin.com | |

Attorneys for Plaintiffs-Appellees

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1) and this Court's Order issued May 3, 2017 (Document No. 1673751), Plaintiffs-Appellees certify as follows:

**A.      Parties and Amici**

All parties, intervenors, and amici appearing before the district court and in this court are listed in the Certificate as to Parties, Rulings, and Related Cases filed by Defendant-Appellant Productos Lacteos Tocumbo S.A. de C.V.

**B.      Rulings Under Review**

References to the rulings at issue appear in the Certificate as to Parties, Rulings, and Related Cases filed by Defendant-Appellant Productos Lacteos Tocumbo S.A. de C.V.

**C.      Related Cases**

This case has not previously been before this or any other court. Counsel for Plaintiffs-Appellees are not aware of any related cases within the meaning of Circuit Rule 28(a)(1)(C).

Dated:  October 27, 2017

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By         * /s/ Laura L. Chapman*
                    LAURA L. CHAPMAN

           Attorneys for Plaintiffs-Appellees

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1 and D.C. Circuit Rule 26.1,

Plaintiffs/Appellees Paleteria La Michoacana, Inc., Paleteria La Michoacana (Sub), Inc., and PLM Operations, LLC make the following disclosures:

**Paleteria La Michoacana, Inc.** is a California corporation. No publicly held corporation has a 10 percent or greater ownership interest in it. Paleteria La Michoacana, Inc. was in the business of manufacturing frozen novelties

**Paleteria La Michoacana (Sub), Inc.** is a California corporation. No publicly held corporation has a 10 percent or greater ownership interest in it. Paleteria La Michoacana (Sub), Inc. was in the business of manufacturing frozen novelties.

**PLM Operations, LLC** is Delaware limited liability company. No publicly held corporation has a 10 percent or greater ownership interest in it. PLM Operations, LLC is in the business of manufacturing frozen novelties.

Dated: October 27, 2017

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____ */s/ Laura L. Chapman* _____
LAURA L. CHAPMAN

Attorneys for Plaintiffs-Appellees

iii

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE AS TO PARTIES, RULINGS,
AND RELATED CASES .................................................................................i

CORPORATE DISCLOSURE STATEMENT ....................................................... iii

TABLE OF AUTHORITIES ................................................................... viii

I.     INTRODUCTION ...................................................................................1

II.    ISSUES PRESENTED .............................................................................1

       A.    Trademark Issues...................................................................1

             1.    "La Michoacana" ........................................................1

             2.    The Indian Doll Design...............................................2

       B.    False Advertising Issues........................................................2

       C.    Monetary Relief Issues..........................................................2

       D.    Jury Trial Issues....................................................................3

III.   STATUTES AND REGULATIONS ........................................................3

IV.    STATEMENT OF THE CASE ................................................................3

       A.    Relevant Factual Background ...............................................6

             1.    PLM Began as a Local Pushcart Business...................6

             2.    In Mexico, Prolacto Is Only One of Numerous
                   Independent "La Michoacana" Ice Cream Shops.......9

             3.    Prolacto Submitted False Evidence in Support of Its
                   Claims ......................................................................10

       B.    Procedural History...............................................................13

V.     STANDARD OF REVIEW.....................................................................13

       A.    Findings of Fact Are Reviewed for Clear Error...................13

       B.    Conclusions of Law Are Reviewed De Novo .......................14

       C.    The Standard of Review for Mixed Questions of Law and Fact ........15

       D.    Discretionary Rulings Are Reviewed for Abuse..................15

       E.    Harmless Error Cannot Overturn a Judgment......................16

VI.    ARGUMENT........................................................................................17

A.     Summary of PLM's Arguments ...........................................17

B.     The Rules Governing Trademark Disputes...........................17

    1.     Lanham Act Claims ...................................................17

    2.     The Elements of a Trademark Claim .........................19

    3.     Trademark Rights Derive From Priority of Use in the U.S.........................................................................20

    4.     U.S. Trademark Rights Are Determined By Priority of Use on a Market-By-Market Basis Within the U.S. ................21

    5.     Adjudicating Competing Claims of Priority Within the U.S.........................................................................21

B.     The District Court Correctly Determined the Geographical Market Areas .....................................................................23

C.     The District Court Correctly Refused to Enjoin PLM from Using "Michoacana" ........................................................24

    1.     The District Court Correctly Determined that Prolacto Failed to Prove That "Michoacana" Is Either Inherently Distinctive or Distinctive Through Secondary Meaning..........24

        a.     The District Court Correctly Found that Prolacto Failed to Prove "Michoacana" Is Inherently Distinctive...............................................................24

        b.     Prolacto Failed To Prove Inherent Distinctiveness ........24

        c.     The District Court Correctly Determined that Prolacto Failed to Prove It Had Secondary Meaning in "Michoacana" in the U.S............................31

        d.     Third Party Use Prohibits A Finding of Distinctiveness...............................................32

        e.     Prolacto's Argument About the Proper Time for Measuring Distinctiveness Is Wrong...........................33

D.     The District Court Correctly Enjoined Prolacto From Using the Indian Girl Design in California and Texas Based on The Parties' Respective Uses in the U.S. ...................................33

    1.     The District Court Correctly Found that PLM Has Priority of Use of the Indian Girl Design Mark in California and Texas .....................................................33

2.      The District Court Correctly Applied the Presumption of Distinctiveness in Favor of PLM ...............................................35

3.      The District Court Correctly Found a Likelihood of Confusion Between the Indian Girl Design Marks At Issue......................................................................................37

4.      Prolacto's Incontestability Argument Is a Red Herring ..........38

E.      The District Court Correctly Disregarded Any Alleged Trademark Use in Mexico....................................................................39

1.      "Michoacana" Does Not Function As a Trademark In Mexico, as the District Court Properly Found.........................40

2.      The District Court Properly Rejected Prolacto's Claim of "Bad Faith" ............................................................................44

3.      Prolacto's Reliance on Belmora v. Bayer Is Misplaced ..........46

a.      Belmora Involves a "Famous Mark" Exception to the Territoriality Principle ................................................47

b.      Prolacto's Claims Under Belmora Also Fail For Want of Any Actual or Likely Harm.............................49

F.      The District Court Correctly Entered Judgment in Favor of PLM on Prolacto's False Advertising Claim ......................................52

1.      The Elements of a Lanham Act False Advertising Claim ........53

2.      Prolacto Did Not Prove It Had Standing to Prevail on Its Section 1125(a) False Advertising Claim And Has Waived Any Standing Argument On Appeal ..........................53

3.      The District Court Properly Determined That Prolacto Did Not Prove the Element of Materiality...............................53

a.      Prolacto Did Not Present Any Evidence of Materiality...................................................................54

b.      Prolacto's Argument For a "Presumption" of Materiality Fails in Several Respects .............................55

4.      The District Court Properly Determined That Prolacto Did Not Prove the Element of Injury.......................................57

G.      The District Court Correctly Determined That Prolacto Was Not Entitled to Money Damages.........................................................58

vi

1.    Prolacto's Failure to Move for Summary Judgment on Its Claim For Money Damages Is Irrelevant ..................................58

H.    The District Court Correctly Determined That Prolacto Had No Right to a Jury Trial..............................................................60

VII.   CONCLUSION.............................................................................61

CERTIFICATE OF COMPLIANCE ....................................................62

CERTIFICATE OF SERVICE ..............................................................63

ADDENDUM .......................................................FILED SEPARATELY

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*
   361 F. Supp. 2d 958 (D. Minn. 2005)............................................................53, 54

*A. Bourjois & Co. v. Katzel*
   260 U.S. 689, 43 S.Ct. 244, 67 L.Ed. 464 (1923)..............................................47

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*
   511 F. Supp. 2d 1 (D.D.C. 2007).......................................................................20

*Allard Enters. v. Advanced Programming Res., Inc.*
   249 F.3d 564 (6th Cir. 2001) ............................................................................18

*Alpo Petfoods, Inc. v. Ralston Purina Co.*
   720 F. Supp. 194 (D.D.C. 1989).......................................................................55

*ALPO Petfoods, Inc. v. Ralston Purina Co.*
   913 F.2d 958 (D.C. Cir. 1990)..........................................................................53

*Alsabri v. Obama*
   684 F.3d 1298 (D.C. Cir. 2012)........................................................................15

*Am. Ass'n for Advancement of Sci. v. Hearst Corp.*
   498 F. Supp. 244 (D.D.C. 1980).......................................................................39

*American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*
   494 F.2d 3 (5th Cir. 1974) ................................................................................32

*American Steel Foundries v. Robertson*
   269 U.S. 372 (1926)..........................................................................................18

*Ames v. Nationwide Mut. Ins. Co.*
   760 F.3d 763 (8th Cir. 2014) ............................................................................59

*Anderson v. City of Bessemer City*
   470 U.S. 564 (1985)....................................................................................13, 15

*Anheuser-Busch Inc. v. Stroh Brewery Co.*
   750 F.2d 631 (8th Cir. 1984) ............................................................................29

*Arakawa v. Reagan*
666 F. Supp. 254 (D.D.C. 1987) ......................................................................60

*Aristotle Int'l, Inc. v. NGP Software, Inc.*
714 F. Supp. 2d 1 (D.D.C. 2010) .....................................................................53

*Armstrong Co. v. Nu-Enamel Corp.*
305 U.S. 315 (1938) .........................................................................................18

*AstraZeneca LP v. Tap Pharm. Products, Inc.*
444 F. Supp. 2d 278 (D. Del. 2006) .................................................................60

*Avila v. Rubin*
84 F.3d 222 (7th Cir. 1996) .............................................................................56

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*
829 F. Supp. 2d 802 (D. Minn. 2011) ..............................................................56

*Baldwin v. Taishang Gypsum Co.*
Ltd., 742 F.3d 576 (5th Cir. 2014) ...................................................................14

*Belmora LLC v. Bayer Consumer Care AG*
819 F.3d 697 (4th Cir. 2016), cert denied, __ US __ .......... 46, 47, 48, 49, 50, 51

*Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*
872 F.2d 1035 (D.C. Cir. 1989) ..................................................................25, 27

*Borinquen Biscuit Corp. v. M.V. Trading Corp.*
443 F.3d 112 (1st Cir. 2006) ............................................................................39

*Bristol Petroleum Corp., appellant v. Larry D. Harris*, 901 F.2d 165
(D.C. Cir. 1990) ...............................................................................................16

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*
174 F.3d 1036 (9th Cir. 1999) .........................................................................19

*Brookshire v. C.F. Sauer Co.*
63 Fed. App'x. 736 (4th Cir. 2003) ..................................................................59

*Burkhart v. Washington Metro. Area Transit Auth.*
112 F.3d 1207 (D.C. Cir. 1997) .......................................................................17

*Carey Canada, Inc. v. Columbia Casualty Co.*
  940 F.2d 1548 (D.C. Cir. 1991) ..........................................................16

*Carter-Wallace, Inc. v. Procter & Gamble Co.*
  434 F.2d 794 (9th Cir. 1970) ..............................................................33

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*
  284 F.3d 302 (1st Cir. 2002)...............................................................56

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*
  228 F.3 24 (1st Cir. 2000)...................................................................56

*Cold War Museum, Inc. v. Cold War Air Museum, Inc.*
  586 F.3d 1352 (Fed. Cir. 2009) ..........................................................18

*Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*
  214 F.3d 432 (3d Cir. 2000) .........................................................20, 33

*Cooper v. Harris*
  137 S. Ct. 1455 (2017)..................................................................14, 54

*Cooter & Gell v. Hartmarx Corp.*
  496 U.S. 384 (1990).............................................................................16

*Crystal Entm't & Filmworks, Inc. v. Jurado*
  643 F.3d 1313 (11th Cir. 2011) ..........................................................18

*D.C. v. Air Florida, Inc.*
  750 F.2d 1077 (D.C. Cir. 1984) ..........................................................28

*DeGidio v. West Grp. Corp.*
  355 F.3d 506 (6th Cir. 2004) ..............................................................32

*Echo Travel, Inc. v. Travel Associates, Inc.*
  870 F.2d 1264 (7th Cir. 1989) ............................................................32

*Educational Dev. Corp. v. Economy Co.*
  562 F.2d 26; 195 U.S.P.Q. 482 (10th Cir. 1977)................................29

*Emergency One, Inc. v. Am. Fire Eagle Engine Co.*
  332 F.3d 264 (4th Cir. 2003) ........................................................22, 23

*Empresa Cubana del Tabaco v. Culbro Corp.*
   123 F. Supp. 2d 203 (S.D.N.Y. 2000) ................................................................60

*Entergy Ark., Inc. v. Nebraska*
   358 F.3d 528 (8th Cir. 2004) ................................................................60

*Equine Techs., Inc. v. Equitechnology, Inc.*
   68 F.3d 542 (1st Cir. 1995)................................................................35

*Esso Standard Oil Co. v. Sun Oil Co.*
   229 F.2d 37 (D.C. Cir. 1956)................................................................14

*Filtration Solutions Worldwide, Inc. v. Gulf Coast Filters, Inc.*
   No. 08-0102-CV-W-FJG, 2010 U.S. Dist. LEXIS 2130 (W.D. Mo.
   Jan. 12, 2010)................................................................56

*Food Fair Stores, Inc. v. Square Deal Market Co.*
   206 F.2d 482 (D.C. Cir. 1953)................................................................21

*Ford Motor Co. v. Summit Motor Prod., Inc.*
   930 F.2d 277 (3d Cir. 1991) ................................................................20

*Formella v. Brennan*
   817 F.3d 503 (7th Cir. 2016) ................................................................59

*Foxtrap, Inc. v. Foxtrap, Inc.*
   671 F.2d 636 (D.C. Cir. 1982)................................................................23

*Frosty Treats, Inc. v. Sony Computer Ent. Am., Inc.*
   426 F.3d 1001 (8th Cir. 2005) ................................................................36

*Fuji Photo Film Co., Inc. v. Shinohara Shoji Kabushiki Kaisha*
   754 F.2d 591 (5th Cir.1985) ................................................................47

*G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*
   873 F.2d 985 (7th Cir. 1989) ................................................................29

*Gen. Motors Corp. v. Lanard Toys, Inc.*
   468 F.3d 405 (6th Cir. 2006) ................................................................36

*Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw, Inc.*
   452 F. Supp. 2d 1 (D.D.C. 2006)................................................................19, 26

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*
  442 U.S. 366 (1979).................................................................60

*Grenier v. Cyanamid Plastics, Inc.*
  70 F.3d 667 (1st Cir. 1995).......................................................59

*Grupo Gigante SA De CV v. Dallo & Co., Inc.*
  391 F.3d 1088 (9th Cir. 2004) ...........................................20, 48, 49

*Hackett v. Feeney*
  No. 2:09-cv-02075-RLH-LRL, 2011 U.S. Dist. LEXIS 101485 (D.
  Nev. Sept. 8, 2011) ...............................................................56

*Hanover Star Milling Co. v. Metcalf*
  240 U.S. 403 (1916)......................................................22, 23, 45

*Harris v. Folk Constr. Co.*
  138 F.3d 365 (8th Cir. 1998) .....................................................51

*Hasbro, Inc. v. Lanard Toys, Ltd.*
  858 F.2d 70 (2d Cir. 1988) .......................................................30

*Ingenohl v. Walter E. Olsen & Co., Inc.*
  273 U.S. 541, 47 S.Ct. 451, 71 L.Ed. 762 (1927)...............................47

*Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*
  931 F.2d 1519 (11th Cir. 1991) ..................................................30

*ITC Ltd. v. Punchgini, Inc.*
  482 F.3d 135 (2d Cir. 2007) .................................................20, 48

*James v. Int'l Painters and Allied Trades Industry Pension Plan*
  738 F.3d 282 (D.C. Cir. 2013)....................................................16

*Jarabes Veracruzanos, Inc. v. Productora De Alimentos Mexicanos*
  No. SA-14-CA-466-FB, 2016 U.S. Dist. LEXIS 180962 (W.D.
  Tex. Apr. 8, 2016)..................................................................20

*Jenkins v. County of Riverside*
  398 F.3d 1093 (9th Cir. 2005) (per curiam) ....................................59

*Johns-Manville Corp. v. Ladd*
  328 F.2d 563 (D.C. Cir. 1964).....................................................14

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*
   299 F.3d 1242 (11th Cir. 2002) ...................................................................55, 56

*Jung v. Ass'n of Am. Med. Colleges*
   184 Fed. App'x. 9 (D.C. Cir. 2006)...................................................................38

*Keds Corp. v. Renee Int'l Trading Corp.*
   888 F.2d 215 (1st Cir. 1989)...............................................................................38

*Latif v. Obama*
   677 F.3d 1175 (D.C. Cir. 2012).........................................................................13

*Leelanau Wine Cellars v. Black & Red*
   502 F.3d 504 (6th Cir. 2007) .............................................................................31

*Levi Strauss & Co. v. Genesco, Inc.*
   742 F.2d 1401 (Fed. Cir. 1984) .........................................................................32

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
   134 S. Ct. 1377 (2014).................................................................49, 50, 51, 53

*Libya v. Miski*
   889 F. Supp. 2d 144 (D.D.C. 2012)............................................................26, 31

*Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*
   186 F.3d 311 (3d Cir. 1999) ...............................................................................21

*Lucky's Detroit, LLC v. Double L, Inc.*
   533 Fed. App'x. 553 (6th Cir. 2013) ................................................................38

*Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*
   299 F.3d 643 (7th Cir. 2002) .............................................................................60

*McLane Co. v. EEOC*
   137 S. Ct. 1159 (2017)........................................................................................15

*McMillan v. United States*
   112 F.3d 1040 (9th Cir. 1997) ...........................................................................51

*Mil-Mar Shoe Co. v. Shonac Corp.*
   75 F.3d 1153 (7th Cir. 1996) .............................................................................24

*Natural Footwear, Ltd. v. Hart, Schaffner & Marx*
   760 F.2d 1383 (3d Cir. 1985) .................................................................23

*In re Nett Designs*
   236 F.3d 1339 (Fed. Cir. 2001) .............................................................28

*Neuren v. Adduci, Mastriani, Meeks & Schill*
   43 F.3d 1507 (D.C. Cir. 1995).................................................................16

*Obaydullah v. Obama*
   688 F.3d 784 (D.C. Cir. 2012).................................................................13

*Osborn v. Griffin*
   865 F.3d 417 (6th Cir. 2017) .................................................................60

*Palmer v. Valdez*
   560 F.3d 965 (9th Cir. 2009) .................................................................60

*Pandazides v. Va. Bd. of Educ.*
   13 F.3d 823 (4th Cir. 1994) ...................................................................60

*Park N' Fly Inc. v. Dollar Park and Fly, Inc.*
   469 U.S. 189 (1985).................................................................................38

*Parke v. Raley*
   506 U.S. 20 (1992)...................................................................................13

*Person's Co., Ltd. v. Christman*
   900 F.2d 1565 (Fed. Cir. 1990) .......................................................20, 47

*Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*
   130 F.3d 88 (4th Cir. 1997) ...................................................................27

*Philip Morris Inc. v. Allen Distribs., Inc.*
   48 F.Supp.2d 844 (S.D.Ind.1999).........................................................47

*Pike v. Ruby Foo's Den, Inc., of Md.*
   232 F.2d 683 (D.C. Cir. 1956)................................................................23

*Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*
   149 F.3d 722 (7th Cir. 1998) .................................................................27

*Playboy Enters., Inc. v. Chuckleberry Pub., Inc.*
  687 F.2d 563 (2d Cir. 1982) ............................................................35

*Playtex Prods., Inc. v. Georgia-Pacific Corp.*
  390 F.3d 158 (2d Cir. 2004) ...........................................................29

*Pullman-Standard v. Swint*
  456 U.S. 273 (1982)........................................................................15

*Purcell v. Gonzalez*
  549 U.S. 1 (2006)............................................................................13

*Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*
  673 F.3d 294 (4th Cir. 2012) ..........................................................19

*Retail Servs., Inc. v. Freebies Publishing*
  364 F.3d 535 (4th Cir. 2004) ..........................................................28

*Riggs v. Mgmt Corp. v. Columbia Partners, LLC*
  966 F. Supp. 1250 (D.D.C. 1997)....................................................57

*Ringling Bros.-Barnum & Bailey Combines Shows, Inc. v. Utah Div.
  Travel. Dev.*
  955 F. Supp. 598 (E.D. Va. 1997) ...................................................60

*Rodriguez v. Chertoff*
  No. 07-5398, 2008 U.S. App. LEXIS 9611 (D.C. Cir. Apr. 28,
  2008) ...............................................................................................59

*Rogers v. Ingersoll-Rand Co.*
  144 F.3d 841 (D.C. Cir. 1998).........................................................16

*S.C. Johnson & Son, Inc. v. Clorox Co.*
  241 F.3d 232 (2d Cir. 2001) ...........................................................56

*Sam's Riverside, Inc. v. Intercon Solutions, Inc.*
  790 F. Supp. 2d 965 (S.D. Iowa June 10, 2011)..............................56

*San Juan Prods., Inc. v. San Juan Pools, Inc.*
  849 F.2d 468 (10th Cir. 1988) ........................................................18

*Sanijet Corp. v. Jacuzzi Inc.*
No. Civ.A. 3:01CV0897-P, 2002 WL 1398546, at *2 (N.D. Tex.
Feb. 14, 2002) ............................................................................60

*Sara Lee Corp. v. Kayser-Roth Corp.*
81 F.3d 455 (4th Cir. 1996) ........................................................26

*Secular Organizations for Sobriety, Inc. v. Ullrich*
213 F.3d 1125 (9th Cir. 2000) ....................................................32

*Self-Realization Fellowship Church v. Ananda Church of Self-
Realization*
59 F.3d 902 (9th Cir. 1995) ........................................................30

*Smith v. AEGON Cos. Pension Plan*
769 F.3d 922 (6th Cir. 2014) ......................................................39

*Spartan Food Sys., Inc. v. HFS Corp.*
813 F.2d 1279 (4th Cir. 1987) ....................................................23

*Sunrhodes v. Byrne*
No. 2017 U.S. App. LEXIS 11963 (9th Cir. July 5, 2017) ..............39

*Sweetarts v. Sunline, Inc.*
380 F.2d 923 (8th Cir. 1967) ......................................................23

*Synergistic Intern., LLC v. Korman*
470 F.3d 162 (4th Cir. 2006) ......................................................29

*Tana v. Dantanna's*
611 F.3d 767 (11th Cir. 2010) ...............................................21, 22

*Tarpley v. Greene*
221 U.S. App. D.C. 227, 684 F.2d 1 (D.C. Cir. 1982) ....................59

*Tone Bros., Inc. v. Sysco Corp.*
28 F.3d 1192 (Fed. Cir. 1994), *cert. denied*, 514 U.S. 159 (1995) ..............20

*Topps Co., Inc. v. Cadbury Stani S.A.I.C.*
526 F.3d 63 (2d Cir. 2008) .........................................................20

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*
610 F.3d 1171 (9th Cir. 2010) ....................................................60

*Two Pesos, Inc. v. Taco Cabana, Inc.*
505 U.S. 763 (1992)................................................................18, 25, 27

*Ty Inc. v. Perryman*
306 F.3d 509 (7th Cir. 2002), *cert. denied*, 538 U.S. 971 (2003) .....................25

*U.S. ex rel. Totten v. Bombardier Corp.*
380 F.3d 488, 363 U.S. App. D.C. 180 (D.C. Cir. 2004) ...................................51

*U.S. Search, LLC v. U.S. Search.com, Inc.*
300 F.3d 517 (4th Cir. 2002) ...............................................26, 27, 36

*U-Haul Intern., Inc. v. Jartran, Inc.*
793 F.2d 1034 (9th Cir. 1986) ........................................................56

*United Drug Co. v. Theodore Rectanus Co.*
248 U.S. 90 (1918)................................................................22

*United States v. Delaney*
651 F.3d 15 (D.C. Cir. 2011) ........................................................14

*United States v. Heyer*
740 F.3d 284 (4th Cir. 2014) ........................................................14

*United States v. Louisiana*
339 U.S. 699 (1950)................................................................60

*United States v. Steffens*
100 U.S. 82 (1879)................................................................20

*United States v. Toms*
396 F.3d 427 (D.C. Cir. 2005)........................................................15

*Victor Herbert, Appellant v. National Academy of Sciences*
974 F.2d 192 (D.C. Cir. 1992)........................................................14

*Vision Center v. Opticks, Inc.*
596 F.2d 111 (5th Cir. 1979) ........................................................31

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*
529 U.S. 205 (2000)................................................................18

*Waldo v. Consumers Energy Co.*
    726 F.3d 802 (6th Cir. 2013) ................................................................16

*Watson v. United States*
    No. 01-5059, 2001 WL 1154483 (D.C. Cir. Aug. 28, 2001) .............................28

*Williams v. Decker*
    767 F.3d 734 (8th Cir. 2014) ................................................................39

*Williams v. Lew*
    819 F.3d 466 (D.C. Cir. 2016)................................................................51

*Wilson v. James*
    No. No. 15-5338, 2016 U.S. App. LEXIS 9059 (D.C. Cir. May 17, 2016) ................................................................................51

*Yankee Candle Co. v. Bridgewater Candle Co.*
    259 F.3d 25 (1st Cir. 2001) ................................................................36

*Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*
    698 F.2d 786; 217 U.S.P.Q. 988 (5th Cir. 1983)................................................29

*Zobmondo Entm't, LLC v. Falls Media, LLC*
    602 F.3d 1108 (9th Cir. 2010) ................................................................29, 35, 36

## FEDERAL STATUTES & RULES

15 U.S.C.
    § 1057(b)................................................................................18, 35
    § 1065................................................................................38
    § 1114................................................................................19
    § 1114(a)................................................................................17, 19
    § 1115(a)................................................................................18, 35
    § 1115(b)................................................................................38
    § 1125................................................................................19
    § 1125(a)................................................................2, 24, 46, 50, 53
    § 1125(a)(1)(A)................................................................17, 18, 19
    § 1125(a)(1)(B)................................................................19, 51, 52

Federal Rules of Civil Procedure
    Rule 52(b) ...................................................................................38
    Rule 56 .......................................................................................59
    Rule 59(e)...................................................................................38

Federal Rules of Evidence
    Rule 201(b) ................................................................................52

## OTHER AUTHORITIES

5 *McCarthy on Trademarks & Unfair Comp.* § 26:4 & n.2
    (4th ed. 2015) ............................................................................23

5 *McCarthy on Trademarks & Unfair Comp.* § 27:30
    (4th ed. 2015) ............................................................................50

*McCarthy on Trademarks and Unfair Competition*, § 11:44
    (5th ed.2017) .............................................................................38

*Rest. (3d) of Unfair Comp.* § 13, cmt. e
    (Tent. Draft No. 2, Mar. 23, 1990) .............................................25

Thomas McCarthy, *McCarthy on Trademarks and Unfair
Competition*, § 29:51
    (5th ed.2017) .............................................................................47

## I.     INTRODUCTION

Prolacto seeks to overturn the District Court's careful findings of fact and conclusions of law, set forth in over 150 pages and issued after a 13-day trial, as well as nearly a dozen pre-trial orders, on a variety of grounds.  But none of its arguments have merit.  Prolacto largely seeks to retry on appeal factual issues after it failed to submit evidence to support elements of claims on which it bore the burden of proof, or where the District Court determined its evidence was false or incredible.  The District Court was in the best place to weigh the evidence and assess witness credibility, and it did not err, let alone clearly so, in its fact finding.  Nor did the District Court commit any errors of law based on Prolacto's novel and unsupported legal theories.  The District Court faithfully hewed to settled law in rejecting Prolacto's claims.  And Prolacto also overlooks – and therefore waives any challenges to – the District Court's resolution of other dispositive issues fatal to its claims on appeal.  The Court should affirm the District Court.

## II.     ISSUES PRESENTED

### A.     Trademark Issues

#### 1.     "La Michoacana"

Whether the district court properly determined that Productos Lacteos Tocumbo S.A. de C.V. ("Prolacto") does not have trademark rights in "Michoacana" and correctly refused to enjoin Appellee, Paleteria La Michoacana,

1

Inc., et al. ("PLM"), from using "La Michoacana" as a trademark in the Houston,

Texas and Northern California market areas.

### 2.    The Indian Doll Design

Whether the district court properly determined that PLM has trademark

rights in this design of an Indian Girl Doll:



Whether the district court properly enjoined Prolacto from using this design

of an Indian Girl Doll in the Houston, Texas and Northern California market areas:



### B.    False Advertising Issues

Whether the district court correctly determined that Prolacto failed to meet

its burden of proof to show standing, materiality and lack of injury necessary to

prevail on its Lanham Act false advertising claim under 15 U.S.C. § 1125(a).

### C.    Monetary Relief Issues

Whether the district court correctly prohibited Prolacto from recovering any

form of monetary relief.

2

### D.    Jury Trial Issues

Whether the district court properly struck Prolacto's demand for jury trial.

## III.    STATUTES AND REGULATIONS

Except for those statutes, regulations, and other materials contained in the attached Addendum of Appellees, all applicable statutes, etc. are contained in the Brief and Addendum of Appellant.

## IV.    STATEMENT OF THE CASE

"La Michoacána" and a drawing of an Indian girl doll are widely used in Mexico to denote popsicle and ice cream shops:



"La Michoacána"

"La Michoacána" is "the woman or girl from Michoacán," a state in Mexico. She wears the native dress of the Purépecha Indian tribe, who are from Michoacán. According to historic folklore, Mexican-style popsicles, or paletas, were first sold in Michoacán in the 1940s, and the first paleteria, or popsicle shop, was in the town of Tocumbo, Michoacán.  That shop was named "Paleteria La Michoacána."

The defendant/appellee, Prolacto, was founded in 1992.  Its owners claim that their ancestor, Rafael Malfavon, started the first Paleteria La Michoacána in Tocumbo.  Although this may be of historic and cultural interest, it has no bearing

3

on any legal issues in this case; it is irrelevant because neither Michoacána nor the Indian girl design denote a single source of frozen treats in Mexico and therefore do not function as trademarks in Mexico.  This is an undisputed fact, which Prolacto's own witnesses admitted on cross-examination at trial.

In 1991, PLM adopted "La Michoacana" in the U.S. for use in its pre-packaged paleta and ice cream business.  In 1994, PLM started using two Indian girl designs in connection with its business: one holding a paleta and one holding an ice cream cone.  PLM adopted these marks in good faith, as neither was used exclusively in Mexico and did not denote a single source of goods.

The U.S. Patent and Trademark Office ("USPTO") issued these trademark registrations to PLM for its Indian Girl designs in 2004 and 2005:



After PLM adopted "La Michoacana" and the Indian Girl in the U.S., Prolacto began opening and operating local ice cream shops in the U.S. using various word and design marks, including "La Flor de Michoacan" (the flower of Michoacan) and "La Michoacana." It was only after this dispute arose that Prolacto began using an Indian Girl design in the U.S. markets where PLM had been doing

4

business.  Prolacto's adoption of the Indian Girl was part of a fraudulent attempt to claim priority of use in the U.S. and was a willful trademark infringement.

In this action, Prolacto claims it has trademark rights in the U.S. over both "Michoacána" and the Indian Girl design based on its prior use in Mexico. Prolacto sought to enjoin PLM from using those marks.

PLM claims it has trademark rights in the U.S. over the Indian Girl design, based on PLM's first use in the U.S., and sought to enjoin Prolacto from using it.

PLM prevailed on almost all of the claims in this action (and has not appealed the claim on which it lost).  The district court properly applied well-settled law and found that Prolacto's prior use in Mexico is irrelevant, that trademark rights *in the United States* derive solely from prior continuous use of the marks *in the U.S.* (and not in any other country) and enjoined Prolacto from using the Indian Girl design in the U.S. markets at issue where the parties intersect commercially (Northern California and Houston) based on the proper finding that PLM was the first to use the Indian Girl design in those markets.

Prolacto seeks to overturn no fewer than 11 orders entered by the district court, all of which were properly decided.  Prolacto has a history in this case of failing to provide evidence on the issues on which it has the burden of proof.  As the district court stated in frustration over Prolacto's failure to provide evidence

5

supporting its claims during the summary judgment phase, "judges are not like pigs, hunting for truffles buried in briefs or the record." (APP0250.)

The key evidence Prolacto presented was proven to be false and was apparently orchestrated and/or known to be false by Prolacto's then-counsel of record. As PLM uncovered the truth at trial, Prolacto's then-lead counsel attempted to verbally and physically intimidate PLM's counsel of record to discourage her from revealing the false nature of the evidence Prolacto's counsel had concocted. His behavior was so aggressive and inappropriate that, during the trial, the district court judge entered a restraining order against him, telling Prolacto's counsel on the record:

> [Y]ou don't have your emotions under control. You are way too close to this case. It is about your client, it is not about you. And you have to control your emotions. And you cannot get, I'm ordering this, within 20 feet of their counsel. If something has to be communicated to them, Mr. War [Prolacto's then-local counsel] must do it.

(APP___.)

There is no merit whatsoever to any of Prolacto's claims on appeal. All of the district court orders at issue here should be affirmed.

## A.    Relevant Factual Background

### 1.    PLM Began as a Local Pushcart Business

PLM's business began in 1991, when two brothers, Mexican immigrants Ignacio Gutierrez and Ruben Gutierrez, began selling *paletas* (a Mexican style

popsicle) out of pushcarts in Northern California using the name "La Michoacana," which literally means, "the woman from the state of Michoacán." The partnership dissolved in 1999, and Ignacio Gutierrez operated the business as a sole proprietorship for several years before incorporating in California.

Since inception, PLM and its predecessors-in-interest have continuously and consistently used "Michoacana" as a trademark in connection with making and selling *paletas*, *bolis* and ice cream, including on pushcarts and product packaging, as shown below. (APP0628-629.)



**(APP0873.)**                                    **(APP0832.)**

Beginning in the mid-1990s, PLM began using Indian Girl designs with their *paleta* business on shipping boxes and business cards. Over time, PLM refined and modernized the Indian Girl design to add color and more detail. The chart below shows the Indian Girl design marks used by PLM over time and the dates that PLM first used each version of the mark.



| 1994[1] | 1995[2] | 2001[3] | Early 2000s[4] | Early 2000s[5] | Early 2000s[6] | 2004[7] | 2005[8] |

In 2005, PLM began selling its products to supermarket and grocery store chains in Texas, including in the areas of Houston and Dallas, that in turn offered PLM's products for sale to consumers. (APP0705-706.)

Today, PLM sells its products to Walmart, large supermarkets such as Safeway, HEB, Albertsons, and Super Value, and regional chain stores, such as Save Mart, FoodMaxx, and Lucky Stores in the Northern California area, and Vallarta Supermarkets, Northgates, and El Super in the Southern California area.

---

[1] (APP0638; APP____.)
[2] (APP0637-638; APP____.)
[3] (APP0639-640; APP___; APP0845.)
[4] (APP____.)
[5] (APP0710, APP0874, APP____.)
[6] (APP___; APP___; APP___; APP____.)
[7] (APP___; APP___; APP0857.)
[8] (APP___; APP____.)

8

(APP0690-691.)  PLM also sells some of its product to distributors that distribute to street vendors.  (APP0691.)  PLM currently sells its products in,  approximately, 30 states or more.  (APP0706.)

### 2.     In Mexico, Prolacto Is Only One of Numerous Independent "La Michoacana" Ice Cream Shops

Prolacto was founded in 1992.  Before it entered the U.S. market in 2000, Prolacto, either directly or through licensees, owned and operated paleterias in various cities and states in Mexico, which it still does today.  (APP0766-767.) Prolacto's stores in Mexico use various different marks.  (APP0766 (testifying that stores may use "La Michoacana Natural," "La Flor De Michoacan," "La Michoacana," some featuring a butterfly design, some with an Indian Girl design, and still others with a different design).)

Contrary to Prolacto's contention, in Mexico, countless "La Michoacana" ice cream shops have been opened by hundreds, if not thousands, of different families throughout Mexico.  (APP____.)  Prolacto's own witnesses admitted at trial that many people, other than Prolacto and its directors, have used, and continue to use, variants of "La Michoacana" and an Indian Girl in Mexico. (APP____.)  Indeed, Prolacto's witnesses estimated that thirty percent of all of the "La Michoacana" ice cream shops in Mexico, at least some of which use the Indian Girl, are owned and operated by people other than Prolacto and those related to its

9

directors.  (APP____.)  These undisputed facts show that "Michoacana" does not denote a single source of product.

### 3.    Prolacto Submitted False Evidence in Support of Its Claims

Prolacto long claimed to make continuous use of the Indian Girl design at all of its U.S. stores since the early 2000's.  At trial, PLM demonstrated that this was not true.  Rather, PLM showed that Prolacto's stores had ***not*** started to use the Indian Girl ***until mid-2012***.  PLM proved the false nature of Prolacto's claims of priority through the testimony and work product of two private investigators, Patti James and Zachary Fechheimer.[9]  The charts below illustrate Prolacto's misrepresentations as to its alleged use of the Indian Girl.

| **Prolacto Claimed to Use the Indian Girl Design _Since 2002_ in Stores in Houston, Texas, But Did _Not_ Actually Begin Use _Until 2012_** |
|:---:|
| **Prolacto's Texas Store From Approximately 2002-2003** |
|  |
| **(APP0939.)** |

---

[9] PLM also presented evidence that Prolacto falsified evidence submitted to the USPTO regarding trademark use through the testimony and work product of George Reis, a computer forensic analyst.  Prolacto stipulated to Mr. Reis' qualifications as an expert and did not dispute his testimony.  (APP___.)

**Prolacto Claimed to Use the Indian Girl Design _Since 2002_ in Stores in Houston, Texas, But Did _Not_ Actually Begin Use _Until 2012_**

**Prolacto's Texas Store From Approximately 2005-2011**



(APP____.)

**Prolacto's Texas Store in Approximately 2012**





(APP____.)

| Prolacto Claimed to Use the Indian Girl Design _Since the Early 2000's_ in Stores in Florida, But Did _Not_ Actually Begin Use _Until July 2012_ ||
|---|---|
| **March 2012** | **July 2012** |
| **Prolacto's Store in Lake Worth**  (APP____.) | **Prolacto's Store in Lake Worth**  (APP____.) |
| **Prolacto's Store in West Palm Beach**  (APP0895.) | **Prolacto's Store in West Palm Beach**  (APP____.) |
| **Prolacto's Store in Naples** | **Prolacto's Store in Naples** |



| Prolacto Claimed to Use the Indian Girl Design *Since the Early 2000's* in Stores in Florida, But Did *Not* Actually Begin Use *Until July 2012* ||
|---|---|
| **March 2012** | **July 2012** |
| **(APP0911.)** | **(APP___.)** |

## B.    Procedural History

The district court's Findings of Fact and Conclusions of Law traces the procedural history of this case from the past decade in detail.  (APP__.)

## V.    STANDARD OF REVIEW

This Circuit presumes that a district court's decisions are correct; the appellant has the burden of overcoming this presumption.  *Parke v. Raley*, 506 U.S. 20, 29 (1992); *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006); *Latif v. Obama*, 677 F.3d 1175, 1181 (D.C. Cir. 2012).

### A.    Findings of Fact Are Reviewed for Clear Error

A district court's findings of fact are reviewed for clear error.  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985); *Obaydullah v. Obama*, 688 F.3d 784, 792 (D.C. Cir. 2012).  A factual finding is clearly erroneous only "when there

is no evidence to support it, or if the reviewing court, after assessing all of the evidence, is left with the definite and firm conviction that a mistake has been committed." *Baldwin v. Taishang Gypsum Co.*, Ltd., 742 F.3d 576, 584 (5th Cir. 2014); *see also Esso Standard Oil Co. v. Sun Oil Co.*, 229 F.2d 37, 39 (D.C. Cir. 1956) (district court's findings of fact are "not to be overturned lightly.").

The clear error standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *United States v. Heyer*, 740 F.3d 284, 292 (4th Cir. 2014). Where the district court's findings are based on weighing the evidence and evaluating the credibility of witnesses, appellate courts give great deference to the district court's findings. *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017); *Johns-Manville Corp. v. Ladd*, 328 F.2d 563, 564 (D.C. Cir. 1964). Indeed, the district court's credibility determination is "entitled to the greatest deference from this court on appeal." *United States v. Delaney*, 651 F.3d 15, 18 (D.C. Cir. 2011).

### B.    Conclusions of Law Are Reviewed *De Novo*

A district court's conclusions of law are reviewed *de novo*, which involves an independent review by the appellate court. *Victor Herbert, Appellant v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). But in reviewing the district court's conclusions of law *de novo*, the reviewing court may

not retry the evidence or make new findings of fact. *Anderson*, 470 U.S. at 573-75. Determining the facts is the role of the trial court. *Id*.

### C.    The Standard of Review for Mixed Questions of Law and Fact

The standard of review for mixed questions of law and fact is somewhat unsettled. *Pullman-Standard v. Swint*, 456 U.S. 273, 288 (1982) (distinction between question of fact and law is a difficult one). For mixed questions, this Circuit has stated that it reviews the district court's underlying factual findings for clear error but reviews the district court's ultimate determination of an issue of law *de novo*. *Alsabri v. Obama,* 684 F.3d 1298, 1301 (D.C. Cir. 2012). This Circuit has also stated that the district court's determinations of mixed questions of law and fact are sometimes reviewed *de novo* and sometimes reviewed only for abuse of discretion, depending on the particular issue. *United States v. Toms*, 396 F.3d 427, 433 (D.C. Cir. 2005).

### D.    Discretionary Rulings Are Reviewed for Abuse

An appellate court reviews the district court's discretionary rulings for abuse of discretion, giving deference to the district court's determinations in light of the district court's familiarity with the proceedings and evidence in the case. *McLane Co. v. EEOC*, 137 S. Ct. 1159, 1167 (2017). Deference should be awarded to the district court's expertise in making "fact-intensive, close calls," which are "better suited to resolution by the district court than the court of appeals." *Id.* at

15

1168.  When reviewing whether appellate court intervention is warranted to correct an abuse of discretion, the appellate court examines the entire record, containing all the relevant circumstances surrounding a challenged action but "cannot substitute its judgment for that of the trial court." *Bristol Petroleum Corp., appellant v. Larry D. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990).  The court looks to whether the decision was reasonable in light of the record. *See James v. Int'l Painters and Allied Trades Industry Pension Plan*, 738 F.3d 282, 294 (D.C. Cir. 2013).  An abuse of discretion is only found if the district court's decision rests upon a clearly erroneous finding of fact, upon an errant conclusion of law, or upon improper application of law to the facts.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399-405 (1990); *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013).

### E.      Harmless Error Cannot Overturn a Judgment

Appellate courts must ignore all errors by the district court except those affecting a "substantial right[] of the part[y] complaining of the error"; all other errors are harmless and cannot affect the judgment.  *Rogers v. Ingersoll-Rand Co.*, 144 F.3d 841, 846 (D.C. Cir. 1998); *see also Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1512 (D.C. Cir. 1995) (harmless error test "fact specific").

An error is harmless if it did not substantially affect the outcome of the case.  *E.g.*, *Neuren*, 43 F.3d at 1512-15; *Carey Canada, Inc. v. Columbia Casualty*

16

*Co.*, 940 F.2d 1548, 1560 (D.C. Cir. 1991). "The burden of demonstrating prejudice requiring reversal rests with the party asserting error," here, Prolacto. *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1214 (D.C. Cir. 1997).

## VI.    ARGUMENT

### A.    Summary of PLM's Arguments

The district court properly determined the parties' respective trademark rights and appropriately enjoined Prolacto from using an Indian Girl design in the Northern California and Houston, Texas market areas. The court also correctly determined that Prolacto's claim for false advertising failed because Prolacto did not proffer evidence of the required elements of standing, materiality and injury.

### B.    The Rules Governing Trademark Disputes

#### 1.    Lanham Act Claims

The Lanham Act sets forth two categories of claims that are at issue in this case: claims sounding in trademark infringement and a claim for false advertising. Each involves different elements.

The trademark-related claims include infringement of a registered trademark under 15 U.S.C. § 1114(a), which requires the plaintiff to have a federally registered mark, and false designation of origin, passing off and false association under 15 U.S.C. § 1125(a)(1)(A), which do not require a registration.

17

False designation of origin, passing off and false association under 15 U.S.C. § 1125(a)(1)(A) are also referred to as "unfair competition." *American Steel Foundries v. Robertson*, 269 U.S. 372, 380 (1926) ("'The law of trade-marks is but a part of the broader law of unfair competition' … the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another").

A plaintiff asserting a claim of unfair competition can rely on common law trademark rights, rather than a federal registration. *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 768 (1992); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc*., 529 U.S. 205, 209-10 (2000). As explained below, all trademark rights derive from prior continuous use of a name or symbol that denotes a single source of goods or services. *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011); *Allard Enters. v. Advanced Programming Res., Inc*., 249 F.3d 564, 571 (6th Cir. 2001) (trademark rights derive from actual use).

Although obtaining a registration is not necessary to create trademark rights, a registration provides a presumption of validity. 15 U.S.C. §§ 1115(a), 1057(b); *Armstrong Co. v. Nu-Enamel Corp*., 305 U.S. 315, 322 (1938); *Cold War Museum, Inc. v. Cold War Air Museum, Inc*., 586 F.3d 1352, 1356 (Fed. Cir. 2009); *San Juan Prods., Inc. v. San Juan Pools, Inc*., 849 F.2d 468, 474 (10th Cir. 1988) ("Unlike the registration of a patent, a trademark registration of itself does not

18

create the underlying right to exclude. … Nor is a trademark created by registration" as rights in unregistered marks are created through prior use) (citations omitted).

The Lanham Act's false advertising claim is codified at 15 U.S.C. § 1125(a)(1)(B) and is discussed below.

### 2.     The Elements of a Trademark Claim

A claim of infringement of a registered trademark under § 1114(a) and claims of unfair competition under § 1125(a)(1)(A) each require proof of:  (1) prior continuous use of a valid trademark that is inherently distinctive or has acquired secondary meaning; and (2) a substantial likelihood of confusion, deception or mistake as to the source, affiliation or sponsorship of the goods offered under the marks.  *Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw, Inc.*, 452 F. Supp. 2d 1, 26 (D.D.C. 2006).

These elements are the same regardless of whether the mark at issue is registered by the U.S. Patent and Trademark Office ("USPTO").  15 U.S.C. § 1114; 1125; *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 300 (4th Cir. 2012); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999); *Globalaw*, 452 F. Supp. 2d at 26 (citing cases).

### 3.    Trademark Rights Derive From Priority of Use in the U.S.

Trademark rights in the United States derive from priority of continuous use of the mark in the United States. *Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000) (citing *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 292 (3d Cir. 1991)); *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192 (Fed. Cir. 1994), *cert. denied*, 514 U.S. 159 (1995). This "principle of territoriality is fundamental to trademark law." *Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 526 F.3d 63, 70, (2d Cir. 2008).

Under the territoriality rule, priority of use of a trademark outside of the United States does not establish trademark rights in the U.S. *United States v. Steffens*, 100 U.S. 82, 98 (1879); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 155 (2d Cir. 2007); *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1093 (9th Cir. 2004); *Person's Co., Ltd. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 511 F. Supp. 2d 1, 11 n.5 (D.D.C. 2007); *see also Jarabes Veracruzanos, Inc. v. Productora De Alimentos Mexicanos*, No. SA-14-CA-466-FB, 2016 U.S. Dist. LEXIS 180962, at *7-9 (W.D. Tex. Apr. 8, 2016) (foreign use in Mexico does not create enforceable trademark rights in the U.S. and is therefore irrelevant and inadmissible).

### 4.    U.S. Trademark Rights Are Determined By Priority of Use on a Market-By-Market Basis Within the U.S.

U.S. trademark rights are determined on a market-by-market basis within the United States. *Tana v. Dantanna's*, 611 F.3d 767, 776-79 (11th Cir. 2010); *Food Fair Stores, Inc. v. Square Deal Market Co.*, 206 F.2d 482, 484-86 (D.C. Cir. 1953). The first party to use a mark *in a particular geographic market area* within the U.S. (when consumers identify that mark as denoting a single source of goods or services) can obtain rights to use that mark in that area and can sue to prevent subsequent users from using a confusingly similar mark in that area. *Id.*

### 5.    Adjudicating Competing Claims of Priority Within the U.S.

Issues regarding priority can arise when two parties, frequently identified as the "senior user" and the "junior user," use confusingly similar marks in different geographical market areas in the United States. The "senior user" refers to the first seller to adopt and use a mark anywhere in the U.S. *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 316 (3d Cir. 1999). The "junior user" is the *second* seller to adopt and use the mark *in the U.S.*, but can be the *first* to use the mark *in a particular geographical area within the U.S.*, remote from the geographical area of use of the senior user. *Id.*

If the parties' businesses remain separate such that consumers are not confronted with both marks in the marketplace, confusion is not likely and the

21

senior user cannot stop the junior user's use in that remote area (where the senior user does not do business). *Tana*, 611 F.3d at 780-81. But if the senior user ultimately enters the junior user's geographical market area, whether the junior user has superior trademark rights in ***its*** geographical market area depends on the junior user's state of mind at the time it adopted its mark. *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 270-71 (4th Cir. 2003).

If the junior user adopted the mark in good faith, the junior user can oust the senior user from the junior user's territory. *Id.* However, if the junior user adopted its mark in its territory in "bad faith," the junior user's priority of use and priority of rights in that territory may be stripped, and the senior user may oust the junior user from that geographical market area (even though the senior user was the second-comer in that geographical market area). *Id.* This is known as the *Tea Rose-Rectanus* rule, based on a pair of United States Supreme Court cases from 1916 and 1918: *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403 (1916) (the "Tea Rose" case) and *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90 (1918).

Under *Tea Rose-Rectanus*, a senior user in the U.S. of a common law trademark does not have superior trademark rights as compared to a junior U.S. user in a geographical area in which the senior user does not do business, unless and until the senior user proves that the disputed geographical area was within the

22

senior user's "zone of natural expansion"[10] or area of "market penetration."[11] *Emergency One*, 332 F.3d at 268 & n.2.  The *Tea Rose-Rectanus* rule has been consistently followed as the common law rule regarding territorial rights in trademarks, and is followed in the D.C. Circuit.  *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 640 (D.C. Cir. 1982); *Pike v. Ruby Foo's Den, Inc., of Md.*, 232 F.2d 683, 685-86 (D.C. Cir. 1956); *see also* 5 McCarthy on Trademarks & Unfair Comp. ("McCarthy") § 26:4 & n.2 (4th ed. 2015) (discussing and citing cases).

## B.    The District Court Correctly Determined the Geographical Market Areas

With regard to this appeal, the only geographical market areas at issue are where the parties intersect commercially within the United States, which are in California (north of San Francisco) and Texas (in the Houston area).  As the district court correctly noted in its Findings of Fact and Conclusions of Law, PLM's prepackaged paletas and ice cream are sold throughout these regions. (APP0380.)  Prolacto has a licensee that operates a store in Sonoma, California and one in Novato, California.  (APP0444-447.)  Prolacto has another licensee that operates several stores in the Houston, Texas area.  (APP0436-444.)  Prolacto concedes that these two geographical market areas are the only ones at issue in this

---

[10] *Spartan Food Sys., Inc. v. HFS Corp.*, 813 F.2d 1279, 1283 (4th Cir. 1987).
[11] *Natural Footwear, Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1398-99 (3d Cir. 1985); *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 929 (8th Cir. 1967).

appeal.  (APP___.)  The district court appropriately determined that PLM had

superior rights in each market.

### C. The District Court Correctly Refused to Enjoin PLM from Using "Michoacana"

#### 1. The District Court Correctly Determined that Prolacto Failed to Prove That "Michoacana" Is Either Inherently Distinctive or Distinctive Through Secondary Meaning

In Counterclaims II and III, brought pursuant to 15 U.S.C. § 1125(a),

Prolacto alleges common law rights in "Michoacana."  (APP___.)  The district

court correctly entered judgment in favor of PLM on both of those claims after

trial.

##### a. The District Court Correctly Found that Prolacto Failed to Prove "Michoacana" Is Inherently Distinctive

As the party claiming trademark rights in "Michoacana," an unregistered

mark, Prolacto had the burden to prove distinctiveness in support of its

Counterclaims II and III.  *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1156

(7th Cir. 1996).  Prolacto acknowledges that distinctiveness was its burden to

prove.  (App. Br., p. 37.)

##### b. Prolacto Failed To Prove Inherent Distinctiveness

At trial, Prolacto argued that "Michoacana" is inherently distinctive because

it is an "arbitrary" mark when used in connection with ice cream and paletas.  The

district court rejected this contention, finding that Prolacto failed to meet its burden

of proof.  (APP0453.)

24

The district court determined the mark was descriptive, which put the burden on Prolacto to prove acquired distinctiveness, also known as "secondary meaning." (*Id.*)  Secondary meaning indicates that a mark "has come through use to be uniquely associated with a specific source."  *Rest. (3d) of Unfair Comp.* § 13, cmt. e (Tent. Draft No. 2, Mar. 23, 1990).  The district court correctly determined that Prolacto failed to show secondary meaning in Michoacana and therefore determined it was not protectable as a trademark.

The purpose of a trademark is to signify a single source of product.  *Ty Inc. v. Perryman*, 306 F.3d 509, 510 (7th Cir. 2002), *cert. denied*, 538 U.S. 971 (2003).  The source-identifying function of a trademark is accomplished by its distinctiveness.  There are two ways for a trademark user to demonstrate that its mark is distinctive. *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 770 (1992).  The first is to show that a mark is inherently distinctive.  *Id*. at 768.  The other is to show that a mark has acquired distinctiveness by achieving a "secondary meaning" for the source of the product in the minds of consumers.  *Id*. at 768-69.

Trademarks are classified on a spectrum of distinctiveness identified in four general categories: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary or fanciful.  *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1039 (D.C. Cir. 1989).  The classifications can be described as follows:

> A mark is **generic** if it is a common description of
> products and refers to the genus of which the particular

> product is a species. A mark is **descriptive** if it describes the product's features, qualities, or ingredients in ordinary language or describes the use to which the product is put. A mark is **suggestive** if it merely suggests the features of the product, requiring the purchaser to use imagination, thought, and perception to reach a conclusion as to the nature of the goods. An **arbitrary** mark applies a common word in an unfamiliar way. A **fanciful** mark is not a real word at all, but is invented for its use as a mark.

*Globalaw Ltd. v. Carmon & Carmon Law Office & Globalaw, Inc.*, 452 F. Supp. 2d 1, 29 (D.D.C. 2006) (emphasis in original).

Fanciful, arbitrary, and suggestive marks are deemed inherently distinctive even without proof of secondary meaning, and receive the greatest protection against infringement.[12]  *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 464 (4th Cir. 1996); *Libya v. Miski*, 889 F. Supp. 2d 144, 151 (D.D.C. 2012).

In contrast, because a generic word is the common name for a product or service, it can never serve to distinguish source and is thus not eligible for trademark protection.  *U.S. Search, LLC v. U.S. Search.com, Inc.*, 300 F.3d 517, 523 (4th Cir. 2002).

---

[12] An example of a fanciful mark invented for the sole purpose of serving as a trademark is KODAK.  An example of an arbitrary mark that has no logical relationship to the goods or services for which it is used is APPLE for computers. An example of a suggestive mark that suggests, rather than describes, the qualities of the goods on which it is used and requires imagination to make the connection between the mark and the goods / services is GREYHOUND for bus services.

Descriptive marks lie in the middle.  "A descriptive mark may be eligible for protection, but only if it has acquired a 'secondary meaning' in the minds of the public."  *U.S. Search*, 300 F.3d at 523.  Secondary meaning exists when the mark signifies the source or producer of the product, rather than the product itself.  *Blinded Veterans*,  872 F.2d at 1040; *Two Pesos*, 505 U.S. at 766, n.4.

This Circuit has recognized that "[t]hese categories, like tones in a spectrum, tend to blur at the edges and merge together.  The labels are more advisory than definitional, more like  guidelines than pigeonholes.  Not surprisingly, they are somewhat difficult to articulate and to  apply."  *Blinded Veterans Ass'n*, 872 F.2d at 1039 (citation and quotation omitted).

A district court's classification of a mark is a finding of fact reviewed only for clear error. *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 727-28 (7th Cir. 1998); *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 93-94 (4th Cir. 1997).

Prolacto has abandoned its argument that "Michoacana" is arbitrary when used in connection with paletas, ice cream and frozen treats and does not challenge the district court's determination that "Michoacana" is not arbitrary.  Instead, Prolacto now argues for the first time that "Michoacana" is inherently distinctive because it is "geographically suggestive" when used in connection ice cream and paletas.  (App. Br., pp. 33-35.)  Prolacto has not cited to any authority on the

27

existence or meaning of a "geographically suggestive" mark in its appellate brief,

and PLM has not found any cases recognizing or even addressing such a category.

To the extent Prolacto is now arguing on appeal that "Michoacana" is

inherently distinctive as a ***suggestive*** mark, Prolacto is barred from making this

argument for the first time on appeal. *D.C. v. Air Florida, Inc.*, 750 F.2d 1077,

1084 (D.C. Cir. 1984); *Watson v. United States*, No. 01-5059, 2001 WL 1154483,

at *1 (D.C. Cir. Aug. 28, 2001).[13]

Nor should this Court substitute for the trial court in making the

determination as to whether "Michoacana" is descriptive or suggestive.

Determining the difference between suggestive marks (which are inherently

distinctive) and descriptive marks (which are not) is a difficult task. "In the

complex world of etymology, connotation, syntax, and meaning, a term may

possess elements of suggestiveness and descriptiveness at the same time.  No clean

boundaries separate these legal categories." *In re Nett Designs*, 236 F.3d 1339,

1341 (Fed. Cir. 2001); *see also Retail Servs., Inc. v. Freebies Publishing*, 364 F.3d

535, 539 (4th Cir. 2004) (descriptive and suggestive marks "are often difficult to

---

[13] Prolacto also mischaracterizes PLM's arguments stated in PLM's post-trial
briefing.  Prolacto contends that PLM asserted that "Michoacana" was
geographically descriptive and thus unprotectable, but PLM did not make any such
assertion.  PLM stated that "La Michoacana," standing alone *may* be descriptive in
the United States.  (APP__.)  Thus, none of Prolacto's arguments on pages 53-55
of the brief have any relevance here.

distinguish from each other."); *Educational Dev. Corp. v. Economy Co.*, 562 F.2d 26, 29; 195 U.S.P.Q. 482 (10th Cir. 1977) ("The determination is often based on intuitive reactions rather than analytical reasoning."); *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 790; 217 U.S.P.Q. 988 (5th Cir. 1983) (the tests are "somewhat difficult to articulate and to apply.").

Indeed, different courts may reach contradictory conclusions with respect to the same mark. *Compare Anheuser-Busch Inc. v. Stroh Brewery Co.*, 750 F.2d 631, 634 (8th Cir. 1984) (affirming district court's finding that plaintiff had met its burden to prove that "LA" was suggestive of low alcohol beer based on consumer survey evidence), *with G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 998 (7th Cir. 1989) ("LA" merely descriptive when used in connection with low alcohol beer, and thus required secondary meaning to be protectable).

The test most commonly applied by the federal circuit courts of appeal to determine whether a mark is suggestive or merely descriptive is the "imagination" test, which asks whether "imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced," because evidence of such a mental leap shows that the mark is suggestive. *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010); *see also Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 171 (4th Cir. 2006); *Playtex Prods., Inc. v. Georgia-Pacific Corp.*, 390 F.3d 158, 163 (2d Cir. 2004).

29

Under the "imagination" test, if the mental leap between the word and the product's attributes is not almost instantaneous, this strongly indicates suggestiveness.  *See, e.g.*, *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir. 1988) ("GUNG-HO" was suggestive, not directly descriptive, of a cartoon-based toy action doll of a marine sergeant because a "certain amount of creative imagination is required").  In contrast, where little to no mental leap is required, the mark is likely merely descriptive of the goods or services offered.  *See, e.g.*, *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995) ("Self-Realization" descriptive); *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1524 (11th Cir. 1991) (INVESTACORP descriptive of investment brokerage services).  Prolacto has never offered evidence of suggestiveness, i.e., that "Michoacana" suggests ice cream or that, upon encountering "Michoacana," a consumer would use his or her imagination, thought, or perception to reach a conclusion that "Michoacana" would be used in connection with ice cream.

Prolacto incorrectly asserts on appeal that there was no evidence of descriptiveness.  (App. Br., p. 33-35).  "Michoacana" is descriptive of a type of product originating in the Mexican state of Michoacan, as "Paleteria La Michoacana" means popsicle shop in Michoacan.

30

      c.      <u>The District Court Correctly Determined that Prolacto</u>
              <u>Failed to Prove It Had Secondary Meaning in</u>
              <u>"Michoacana" in the U.S.</u>

A district court's conclusion that a mark has not acquired secondary

meaning is reviewed for clear error. *Leelanau Wine Cellars v. Black & Red*, 502

F.3d 504, 514 (6th Cir. 2007).

The burden of proof to establish secondary meaning in an unregistered

descriptive mark is a difficult one to satisfy, as "a high degree of proof is necessary

to establish secondary meaning for a descriptive term." *Id.* (quoting *Vision Center*

*v. Opticks, Inc.*, 596 F.2d 111, 118 (5th Cir. 1979)).

Commonly considered evidence for ascertaining whether secondary meaning

has attached to a mark includes survey evidence, the length and manner of use of

the name, the nature and extent of advertising and promotion of the name, the

volume of sales, and instances of actual confusion. *See Libya v. Miski*, 889 F.

Supp. 2d 144, 154 (D.D.C. 2012).

On appeal, Prolacto argues that the court "ignored extensive evidence of

secondary meaning." (App. Br., p. 33.) But Prolacto fails to identify any such

evidence. As the district court explained, evidence of Prolacto's claim that it had

secondary meaning in "Michoacana" was substantially lacking. Prolacto presented

very little evidence of any advertising, which was conducted only on a local basis

by some of its Houston ice cream shops. (APP0451-453.) The district court also

noted that Prolacto's "consumer witnesses" testified that they did *not* view "La Michoacana" as referring to a single source but rather, a type of product, and that Prolacto's survey expert tested only for likelihood of confusion, not secondary meaning. *Id.* On this scant record, the district court properly concluded that Prolacto did not prove acquired distinctiveness and thus, had no protectable rights in "Michoacana" in the U.S. Consequently, the district court properly entered judgment after trial on Prolacto's trademark claims involving "Michoacana" in favor of PLM, and refused to enjoin PLM from using "Michoacana" in California and Texas.

> d.   Third Party Use Prohibits A Finding of Distinctiveness

Whether a mark is classified as inherently distinctive or not, distinctiveness is lacking when the purported trademark is used by numerous manufacturers; in such a case, the mark does not, in fact, denote a single source. *DeGidio v. West Grp. Corp.*, 355 F.3d 506, 513-14 (6th Cir. 2004); *Secular Organizations for Sobriety, Inc. v. Ullrich*, 213 F.3d 1125, 1130, (9th Cir. 2000); *Echo Travel, Inc. v. Travel Associates, Inc.*, 870 F.2d 1264, 1269 (7th Cir. 1989); *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 13 (5th Cir. 1974); *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1403 (Fed. Cir. 1984).

The district court cited to evidence in the trial record of other businesses using "La Michoacana" in the U.S. for ice cream products. (APP___.). It did not clearly err in determining that "Michoacana" was not distinctive.

> e.     Prolacto's Argument About the Proper Time for Measuring Distinctiveness Is Wrong

Prolacto incorrectly contends that the district court erred in evaluating whether "Michoacana" was distinctive in Texas in 2005 (when PLM entered that market) and instead should have evaluated whether "Michoacana" was distinctive in California in 1991 (when PLM entered that market). (App. Br., p. 33.)

Courts hold that the party claiming infringement must prove the existence of secondary meaning in its mark at the time and place that the alleged infringer (i.e., here, PLM) first began use of that mark anywhere in the U.S. *Commerce Nat. Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000); *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 799 (9th Cir. 1970).

**D.     The District Court Correctly Enjoined Prolacto From Using the Indian Girl Design in California and Texas Based on The Parties' Respective Uses in the U.S.**

**1.     The District Court Correctly Found that PLM Has Priority of Use of the Indian Girl Design Mark in California and Texas**

The district court properly determined that PLM has rights to the Indian Girl designs in California and Texas based on its factual finding that PLM used its

Indian Girl designs in those markets before Prolacto.  These findings were correct

and there was no clear error required to overturn them.

The district court correctly found that PLM used the Indian Girl design

marks, shown below, since at least as early as June 1999:



The district court further correctly found that PLM used slightly revised,

modernized, and color versions of the Indian Girl design marks shown below, as

indicated by the dates below:



| 1999 | 1999 | 2001 | Early 2000s | Early 2000s | Early 2000s | 2004 | 2005 |

Prolacto does not dispute these factual findings made by the district court,

conceding that PLM has priority of use of these Indian Girl designs in the U.S.

(App. Br., p. 41.)[14]

---

[14] While immaterial, Prolacto again misstates the district court's factual findings on
Prolacto's first use dates in the U.S.  Prolacto makes the bare and overarching
assertion that it first started using "La Michoacana" in 1999 and the Indian Girl
design in 2001.  (App. Br., p. 41.)  Prolacto's naked contention is wholly
contradicted by the evidence in the record.  The district court found that Prolacto
did not use "La Michoacana" in the Houston, Texas market until 2002 and that
Prolacto did not use the Indian Girl design in the Houston, Texas area until after

**2.      The District Court Correctly Applied the Presumption of Distinctiveness in Favor of PLM**

Having correctly found that PLM had priority of use of the Indian Girl design in the relevant markets, the district court next considered whether the Indian Girl design mark was distinctive and protectable.

PLM's Reg. Nos. 2,905,172 and 2,968,652 for Indian Girl design marks convey certain evidentiary presumptions.  Specifically, a federal trademark registration is "prima facie evidence" of (1) the validity of the registered mark and of the registration, (2) the registrant's ownership of the mark, and (3) the registrant's exclusive right to use the mark in commerce on the goods or services specified in the registration.  15 U.S.C. §§ 1057(b), 1115(a).  In other words, PLM's registered Indian Girl Design are presumed to be valid and inherently distinctive.  *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1114 (9th Cir. 2010); *Equine Techs., Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544-45 (1st Cir. 1995); *Playboy Enters., Inc. v. Chuckleberry Pub., Inc.*, 687 F.2d 563, 567 (2d Cir. 1982).  Due to the presumption of validity and distinctiveness enjoyed by PLM, Prolacto, as the party attacking PLM's registration, had the burden to rebut

---

2005.  (APP0492.)  The district court further found that Prolacto did not use "La Michoacana" and the Indian Girl design in the northern California area until 2009. (Id., p. 89-90.)  Prolacto has not argued nor shown in its brief that the district court committed clear error in reaching these findings, and thus, Prolacto's unsupported and incorrect assertion about its claimed dates of priority should all be ignored.

the presumption by a preponderance of the evidence.  *Zobmondo*, 602 F.3d at

1114.

A properly conducted survey of the relevant purchasing public is usually the

best evidence of secondary meaning.  *Gen. Motors Corp. v. Lanard Toys, Inc.*, 468

F.3d 405, 419 (6th Cir. 2006); *Frosty Treats, Inc. v. Sony Computer Ent. Am., Inc.*,

426 F.3d 1001, 1005 (8th Cir. 2005); *U.S. Search, LLC v. U.S. Search.com, Inc.*,

300 F.3d 517, 526 n.13 (4th Cir. 2002); *Yankee Candle Co. v. Bridgewater Candle*

*Co.*, 259 F.3d 25, 39 (1st Cir. 2001).

Prolacto did not present ***any*** evidence to challenge the presumption that

PLM's registered Indian Girl design marks are valid and distinctive.  Thus, the

district court correctly found that PLM's registered Indian Girl design marks were

valid, distinctive, and protectable.

### 3.    The District Court Correctly Found a Likelihood of Confusion Between the Indian Girl Design Marks At Issue

The district court correctly found a likelihood of confusion between the parties' Indian Girl design marks shown below (APP0486-489.), a finding that Prolacto has not challenged:





### 4.     Prolacto's Incontestability Argument Is a Red Herring

PLM asserted that its trademark registrations were incontestable[15] in its proposed Findings of Fact and Conclusions of Law that were submitted prior to trial.  Prolacto failed to challenge that assertion.

Prolacto filed a post-judgment motion to amend the district court's findings pursuant to Federal Rule of Civil Procedure ("Rule") 52(b) and to amend the judgment pursuant to Rule 59(e).  (APP___.)  In those motions, Prolacto contended that PLM's registrations were not incontestable.  The district court rejected Prolacto's arguments, on the grounds that Prolacto had waived this argument by failing to raise it in a timely manner at any time before the judgment was entered, and denied Prolacto's motion.  (APP___.)

The district court's denial of Prolacto's motions under Rule 52(b) and 59(e) are reviewed for abuse of discretion.  *Jung v. Ass'n of Am. Med. Colleges*, 184 Fed. App'x. 9, 12 (D.C. Cir. 2006).

---

[15] A registered mark becomes incontestable after it has been in continuous use for five consecutive years.  15 U.S.C. § 1065.  When a registration is incontestable, it is ***conclusively*** presumed to be distinctive.  15 U.S.C. §§ 1115(b), 1065; *Lucky's Detroit, LLC v. Double L, Inc.*, 533 Fed. App'x. 553, 556-57 (6th Cir. 2013); *Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220 (1st Cir. 1989) (citing *Park N' Fly Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205 (1985)); *see also* McCarthy on Trademarks & Unfair Comp. § 11:44 (discussing incontestable registrations).

Circuit courts commonly affirm a district court's decision to ignore an argument that was waived at the district court. *See, e.g.*, *Sunrhodes v. Byrne*, No. 2017 U.S. App. LEXIS 11963, *1 (9th Cir. July 5, 2017); *Smith v. AEGON Cos. Pension Plan*, 769 F.3d 922, 933 (6th Cir. 2014); *Williams v. Decker*, 767 F.3d 734, 741 & n.2 (8th Cir. 2014). Thus, the district court did not commit any abuse of discretion, and its decision on this point should be affirmed.

Even if PLM's two registrations were not incontestable and ***conclusively*** presumed to be valid and distinctive, as explained above, PLM's two registrations are still ***presumed*** to be valid and distinctive—a presumption that Prolacto, as the opposing party, has the burden to rebut, which Prolacto completely failed to do at trial. *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 118 (1st Cir. 2006); *Am. Ass'n for Advancement of Sci. v. Hearst Corp.*, 498 F. Supp. 244, 257 (D.D.C. 1980). Thus, any error with regard to incontestability was harmless.

### E.     The District Court Correctly Disregarded Any Alleged Trademark Use in Mexico

Prolacto concedes it does not have prior continuous use of the marks in the United States, stating that it "could not show conventional U.S. use of either mark [Michoacana or the Indian Girl]." (App. Br., p. 23).

Prolacto incorrectly argues on appeal that it has trademark rights in Mexico that are sufficient to enjoin PLM from using "Michoacana" in California and Texas.

39

### 1.    "Michoacana" Does Not Function As a Trademark In Mexico, as the District Court Properly Found

Prolacto contends that Ruben Gutierrez, an early employee of PLM who later formed a competing company, testified that PLM's success was due to consumer "recognition" of "Michoacana." (App. Br., p. 36, citing APP0740-41.) This testimony is irrelevant. Simply because a name or symbol is "recognized" does not mean it denotes a single source of product or service, which is the hallmark of a trademark. Consider these symbols:

**Symbols and Meaning**



| **Barber<br>in the U.S.** | **Pharmacy<br>in the U.S.** | **Ice Cream Shop<br>in Mexico** |

The barber pole denotes the availability of barber services, not a single source or ownership of all shops that display it. It's a generic symbol, freely available for use by anyone, dating back decades if not centuries. The "Rx" symbol serves a similar function for pharmacies and is not limited to use by a single source.

The Indian Girl is to ice cream in Mexico as the barber pole is to haircuts and "Rx" is to pharmacy—they are symbols of categories of products and services

offered by different providers, not symbols denoting that the product or service is offered by a single source.

Indeed, Prolacto has never claimed that it is the single source of La Michoacana ice cream in Mexico. Rather, Prolacto merely claims to use "La Michoacana" and the Indian Girl in connection with the sale of ice cream, and that consumers are familiar with La Michoacana and the Indian Girl. The use of a mark by a product supplier and its recognition by consumers does not prove secondary meaning. Rather, a trademark user claiming infringement must be the only one (other than the alleged infringer) to use the mark, and consumers must associate that mark with a single source (even if the consumer does not know the identity of the source).

As the district court discussed at length in its Findings of Fact and Conclusions of Law, the evidence demonstrated that while "[t]here are innumerable paleterias throughout Mexico" with "Michoacana" or "La Michoacana" in their name, as Prolacto's own principals and key witnesses admitted at trial, "at least a significant portion of them are not affiliated with Prolacto." (APP0420.) For example, Prolacto witness, Jorge Leon, an attorney and Prolacto's Mexican trademark counsel, testified that there is a paleteria named "La Michoacana" in nearly every town in Mexico and that there could be thousands. (APP___.) Mr. Leon estimated that 30% of paleterias in Mexico named

41

"La Michoacana" are not within Prolacto's control, and that so many ice cream shops in Mexico use an Indian Girl that he "cannot" give a "straight answer" as to the percentage outside of Prolacto's control.  (APP____.)  Similarly, Prolacto's witness Marco Antonio Andrade Malfavon, one of its owners, and a descendent of Rafael Malfavon, testified that there are so many "La Michoacana" paleterias in Mexico that he has  "no idea how many" there are, but there could be  more than 2,000 of them and neither he, Prolacto or his family owns and/or controls all of them.  (APP____.)

Sam Quinones, a journalist who has written extensively on the subject of paletas and paleterias in Mexico, testified that he has seen the image below "all across Mexico and on paleterias in states all across Mexico."  (APP____.)



(APP____.)

Mr. Quinones testified that the depiction of the Indian Girl design varies in Mexico – "In this case she's holding out an ice cream cone. … Sometimes she's bending over … I mean, there's a lot of ways I think she's been depicted.  She is

42

usually dressed in this style, which is the style … commonly associated with the
Purepecha Indians of Michoacan."  (APP___.)

The district court also found that the evidence clearly demonstrated that the
paleterias in Mexico that were owned or operated by or on behalf of Prolacto did
not make consistent use of the same trademarks, and that differences in the marks
used by Prolacto at their Mexican paleterias were so great that "it is difficult to
recognize the stores as being affiliated with each other."  (APP0420.)

Very surprisingly, Prolacto contends that "[e]vidence of anyone using the
term LA MICHOACANA, in any manner, prior to 1991, points only to the
Malfavons' extensive trademark use of the term in Mexico" [16] and "the only
admissible evidence in the record regarding consumer perception of that term is
that of a trademark association with the products of Prolacto."  (App. Br., p. 34.)
*But there is no evidentiary basis for these assertions and the record shows the
polar opposite*—the *only* admissible evidence in the record regarding consumer
perception is that consumers in Mexico do not view either "Michoacana" or the
Indian Girl as an indication of a single source.

The factual finding that "La Michoacana" and the Indian Girl have been
widely used in Mexico by countless independent operators of ice cream shops,

---

[16] This statement is irrelevant because the "Malfavons" are not parties to this
action; Prolacto is.

based on evidence from Prolacto's own witnesses, was proper, well supported and could not, by any stretch, be found to be erroneous, let alone clearly erroneous. This evidence demonstrates Prolacto's inability to prove that "La Michoacana" and/or an Indian Girl is a source-identifier in Mexico and therefore cannot serve as the basis for any trademark rights a matter of well-established law.

### 2.    The District Court Properly Rejected Prolacto's Claim of "Bad Faith"

Prolacto contends that PLM should be stripped of its priority ***in the U.S.*** based on Prolacto's claim that PLM adopted the "La Michoacana" and Indian Girl design marks in bad faith in the U.S. by "intentional[ly] copying" Prolacto's use of Michoacana in Mexico and acting with "predatory intent to trade off Prolacto's goodwill" that it claims to have established through its "extensive use" of the marks ***in Mexico***.  (App. Br., p. 28, 31.)[17]

---

[17] In making this argument, Prolacto relies on principles and theories that have no basis in law, and for which no legal precedent exists.  For example, Prolacto argues that the district court failed to consider the "carryover reputation" that Prolacto had in the U.S. based on Prolacto's use in Mexico.  (App. Br., p. 24, 37.)  Prolacto does not cite to any authority for what constitutes "carryover reputation," and PLM has found none.  Prolacto appears to use "carryover reputation" as another label for the "famous mark" doctrine, which the district court correctly concluded does not apply because Prolacto did not meet the necessary standard, and which Prolacto does not contest.  Thus this idea of "carryover reputation" is nonsensical and should be ignored.  The Court should therefore disregard Prolacto's arguments based on "carryover reputation."

The district court did not err in concluding there was no "bad faith." As an initial matter, as explained above, under the territoriality principle, Prolacto must have made prior use of the marks in the U.S. under *Tea Rose-Rectanus* and its progeny. Prolacto urges this Court to ignore a century of precedent and overturn territoriality, the cornerstone principle of trademark law, to hold that use outside of the U.S. can create rights in the U.S. There is no basis to do so, in this case or otherwise.

Prolacto contends that PLM's bad faith is evidenced by testimony from PLM's founders, Ignacio and Ruben Gutierrez, that they saw "extensive use" of "La Michoacana" in Mexico—one such paleteria "in every town" and "on every corner"—before they adopted the mark in the U.S. (App. Br., p. 56-57.) This testimony is irrelevant because Prolacto's key witness admitted on cross-examination at trial that Prolacto is not the exclusive user of "Michoacana" or the Indian Girl design in Mexico, and as a result, there could be no effort to trade off of Prolacto's goodwill. (APP____.) The district court properly found that the evidence in this case demonstrates that PLM did not know Prolacto existed at the time PLM adopted its marks, did not witness ***Prolacto's*** alleged business or trademark use in Mexico, and did not copy anything that functioned as a trademark in Mexico when it adopted "La Michoacana" and the Indian Girl Design in the United States. (APP___.) The district court also correctly determined that when

45

PLM adopted "La Michoacana" in the U.S. in 1991, Prolacto was not yet in existence as the company was not formed until 1992. (APP____.) Thus, PLM's adoption and use of "La Michoacana" and the Indian Girl did not involve palming off Prolacto's product as PLM's own product. There is no record evidence to support a contrary finding.

### 3. Prolacto's Reliance on *Belmora v. Bayer* Is Misplaced

Prolacto incorrectly argues that it should prevail under the Fourth Circuit's recent decision in *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697 (4th Cir. 2016), cert denied, __ US __.[18]  *Belmora* should not be adopted and the district court was correct in rejecting it here.

At issue in *Belmora* was whether a Mexican trademark holder that had ***not*** used the mark in the U.S. could proceed on a § 1125(a) unfair competition claim against a ***U.S.*** owner for the same mark. The Fourth Circuit allowed the Mexican trademark owner's claim to survive dismissal at the pleading stage because there were sufficient allegations of a likelihood of injury to meet the Supreme Court's requirements for "statutory standing" under the Lanham Act, explained below.

---

[18] This argument applies only to Prolacto's Counterclaim II and II for alleged infringement of its "Michoacana" and Indian Girl marks.

46

a.     *Belmora* Involves a "Famous Mark" Exception to the
Territoriality Principle

At first glance, *Belmora* may appear to do away entirely with the principle

of territoriality, which has a long history in the common law.  As McCarthy has

noted, traces of the territoriality principle appear in Justice Holmes's opinion for

the U.S. Supreme Court in *A. Bourjois & Co. v. Katzel*, 260 U.S. 689, 692, 43 S.Ct.

244, 67 L.Ed. 464 (1923). Thomas McCarthy, McCarthy on Trademarks and

Unfair Competition, § 29:51 (5th ed.2017); see also *Philip Morris Inc. v. Allen*

*Distribs., Inc*., 48 F.Supp.2d 844, 850 (S.D.Ind.1999) (identifying *Bourjois* as

marking the shift from "the 'universality' principle [to] a 'territoriality principle'

that recognizes a separate legal existence for a trademark in each country whose

laws afford protection to the mark").  At least two circuits have described

territoriality as "basic to trademark law." *Fuji Photo Film Co., Inc. v. Shinohara*

*Shoji Kabushiki Kaisha*, 754 F.2d 591, 599 (5th Cir.1985); *Person's Co., Ltd. v.*

*Christman*, 900 F.2d 1565, 1569-70 (Fed.Cir.1990).  That status reflects the lack of

a uniform trademark regime across international borders. What one must do to

acquire trademark rights in one country will not always be the same as what one

must do in another. And once acquired, trademark rights gained in other countries

are governed by each country's own set of laws.  *See Ingenohl v. Walter E. Olsen*

*& Co., Inc*., 273 U.S. 541, 544, 47 S.Ct. 451, 71 L.Ed. 762 (1927); *Fuji Photo*, 754

47

F.2d at 599 ("[T]rademark rights exist in each country solely according to that country's statutory scheme.").

The Ninth Circuit recognized a "famous mark" exception to territoriality, permitting a party with a famous trademark to establish priority in the U.S. through reputation in the U.S. even without actual use of the mark in the U.S. *Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1098-99 (9th Cir. 2004) (recognizing the "famous mark" doctrine but not applying it). Indeed, few, if any, courts, have actually applied it and the Second Circuit has explicitly rejected it. *ITC Ltd. v. Punchgini, Inc*., 482 F.3d 135 (2d Cir. 2007).

In articulating a famous mark exception, the Ninth Circuit reasoned that "even those who use marks in other countries can sometimes — when their marks are *famous enough* — gain exclusive rights to the marks in this country." *Grupo Gigante, supra* 391 F.3d at 1095 (emphasis added). In terms of the level of fame, the Ninth Circuit indicated that "a mark should not be categorized as 'famous' unless it is known to more than 50 percent of the defendant's potential customers." *Id*. at 1108 (concurring opinion).

Legal commentators have concluded that the *Belmora* decision is effectively a ruling in which the Fourth Circuit recognized a "famous mark" exception to the territoriality principle. The trademark at issue in *Belmora* was FLANAX, which Bayer registered in Mexico for analgesics and anti-inflammatories. Bayer sold

"hundreds of millions of dollars" of naproxen sodium tablets under the FLANAX

brand in Mexico since 1976 and is the exclusive owner of the trademark in

Mexico.  *Belmora*, 819 F.3d 696 at 702.  The Fourth Circuit also noted that the

FLANAX brand is well-known in Mexico and other Latin American countries, as

well as to Mexican-Americans and other Hispanics in the United States, but was

never marketed or sold  in the U.S.  *See* articles on pages 23-73 of the Addendum

attached hereto.

The district court in this case properly declined to apply any "famous mark"

exception to the territoriality doctrine in this case because Prolacto had not

provided sufficient evidence to even "come close" to establishing that its asserted

marks were sufficiently "famous" or "well-known" under *Grupo Gigante*.

(APP____.)  On appeal, Prolacto expressly states that it does not contest the district

court's determination that its asserted mark is not famous.  (App. Br., p. 42.)  Thus,

the "famous mark" exception is not at issue on appeal and does not apply here.

      b.   <u>Prolacto's Claims Under *Belmora* Also Fail For Want of<br>Any Actual or Likely Harm</u>

*Belmora* cites *Lexmark Int'l,  Inc. v. Static Control Components, Inc.*, 134 S.

Ct. 1377, 1388-91 (2014), which held that to demonstrate "statutory standing" in a

Lanham Act claim, the claimant must demonstrate that it falls  within the "zone of

interests" the statute was designed to protect and has suffered injuries that were

proximately caused by a violation of the statute. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388-91 (2014).

To come within the zone of interests in a § 1125(a) claim, a plaintiff must "allege an injury to a commercial interest in reputation or sales."  *Lexmark*, 134 S. Ct. at 1390.  Next, the plaintiff must prove that the injury was proximately  caused by the defendant's unlawful conduct.  *See id.* at 1390.  A "plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing  directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Id.* at 1391; *see also* 5  *McCarthy on Trademarks* § 27:30 ("[P]roximate causation means that the plaintiff can trace its  economic or reputational damage directly to the defendant's misrepresentation.").

The district court concluded that Prolacto failed to present any evidence that it suffered or will likely suffer an injury, and that any injury Prolacto allegedly suffered had a causal connection to PLM's alleged conduct.  (APP0500-501.)  The district court correctly found that Prolacto did not meet *Lexmark's* requirement for standing because it "failed to show that it had suffered or  would likely suffer ***any*** injury—either in the form of loss of reputation or loss of sales."  (APP0500-501.)[19]

---

[19] The Fourth Circuit's holding in *Belmora* is narrow based on its recognition that a claimant such as Prolacto "who relies only on foreign commercial activity may

The district court's standing determinations are reviewed *de novo*. *Williams v. Lew*, 819 F.3d 466, 471472 (D.C. Cir. 2016). But there is no need for this Court to revisit the district court's fatal standing determination. Prolacto has not challenged the district court's standing determination on appeal, and thus, it is waived. *U.S. ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 497, 363 U.S. App. D.C. 180 (D.C. Cir. 2004) ("Ordinarily, arguments that parties do not make on appeal are deemed to have been waived."); *see also Wilson v. James*, No. No. 15-5338, 2016 U.S. App. LEXIS 9059, at *2 (D.C. Cir. May 17, 2016); *see also Harris v. Folk Constr. Co.*, 138 F.3d 365, 366 n.1 (8th Cir. 1998); *McMillan v. United States*, 112 F.3d 1040, 1047 (9th Cir. 1997).

Finally, Prolacto wrongly asserts that the district court erred by failing to conclude that Prolacto's injuries may be "presumed." That contention is flatly wrong under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388-91 (2014). Without citing to any supporting authority, Prolacto argues that injury can be "presumed" because the court can take judicial notice of "extensive transit of consumers between Mexico and the U.S." (App. Br., p. 42.) Not so. A court cannot take judicial notice of any purported "extensive transit" of consumers between Mexico and the U.S. because this "fact" is vague and

---

face difficulty proving a cognizable false association injury under § 43(a)." *Id.* at 710 fn. 8.

ambiguous, "subject to reasonable dispute," not "generally known" nor capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned," as required by Fed. R. Evid. 201(b) governing judicial notice.

Prolacto also appears to contend that evidence of alleged harm to its Mexican business was excluded as irrelevant.  (App. Br., p. 43.)  Prolacto was never precluded from presenting evidence of any alleged injury to its Mexican business; it simply failed to proffer any such evidence.

### F.    The District Court Correctly Entered Judgment in Favor of PLM on Prolacto's False Advertising Claim

Prolacto alleges false advertising pursuant to 15 U.S.C. § 1125(a)(1)(B) in Count II of its counterclaim.  Prolacto's false advertising claim involved statements on PLM's packaging, including statements about PLM, images of the product, and statements describing PLM's paletas as the "best paletas in the world," using "the perfect blend of the best ingredients." [20]  The district court correctly entered judgment in favor of PLM on Prolacto's false advertising claim with respect to all of these challenged statements.

---

[20] The allegedly false or misleading statements are set out in full in the district court's Findings of Fact and Conclusions of Law and are not repeated here.

### 1.     The Elements of a Lanham Act False Advertising Claim

To prevail on a Lanham Act false advertising claim, a party must prove that the advertising was (1) false or misleading, (2) actually or likely deceptive, (3) material in its effect on buying decisions, (4) connected with interstate commerce, and (5) actually or likely injurious.  *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 964 (D.C. Cir. 1990); *Aristotle Int'l, Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 6 (D.D.C. 2010) (citations omitted).  As a threshold matter, a party alleging false advertising under § 1125(a) must have standing pursuant to *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).

### 2.     Prolacto Did Not Prove It Had Standing to Prevail on Its Section 1125(a) False Advertising Claim And Has Waived Any Standing Argument On Appeal

As explained above, Prolacto failed to proffer any evidence of standing for any of its § 1125(a) Lanham Act claims and waived this argument on appeal.

### 3.     The District Court Properly Determined That Prolacto Did Not Prove the Element of Materiality

The materiality prong of a false advertising claim requires Prolacto to demonstrate that PLM's falsities or misrepresentations were "likely to influence the purchasing decision" of consumers.  *Aristotle Int'l*, 714 F. Supp. 2d at 9 (citation and quotation omitted); *3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 971 (D. Minn. 2005).

a.    Prolacto Did Not Present Any Evidence of Materiality

The district court found that there was no credible evidence that any of the allegedly false statements that appeared on PLM's packaging or PLM's website influenced, or was likely to influence, an average potential consumer of PLM's products to purchase or not to purchase PLM's products.  (APP0413.)  The district court further found that Prolacto "offered little, if any, evidence that any consumers even saw one of the  above statements, let alone that any consumers factored the statement into their decision whether  to purchase or not purchase PLM's products."  (*Id.*)  The district court made this determination upon consideration of the testimony from several witnesses, including Lorena Salazar, Felipe de Jesus Martinez (a Roman Catholic friar who appeared in court in his habit (APP___.)), and Ramon Salazar, who were Prolacto's own witnesses.  (APP____.)  The district court found these witnesses to be substantially lacking in credibility because they were all close family members of counsel of record for Prolacto.  (APP____.)  All of these witnesses stated that they did not recall reading any of the statements or representations on PLM's packaging and website that Prolacto alleges constitutes false advertising.  (APP____.)

It is the role of the district court judge in a bench trial to assess the credibility of witnesses and weigh the evidence.  *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017).  The district court judge properly did so here.  There is no basis

54

to overturn the district court's finding that Prolacto failed to establish the necessary element of materiality to prevail on its false advertising claim.

> b.     Prolacto's Argument For a "Presumption" of Materiality Fails in Several Respects

Prolacto concedes that it did not prove materiality at trial; on appeal, it now argues for the first time that the district court should have applied a "presumption" of materiality.  (App. Br., p. 53-54.)  Prolacto is wrong.

On summary judgment, the district court, on its own accord, addressed the issue of a presumption of materiality, explaining that courts are divided on whether materiality can be presumed when a statement is found to be literally false. (APP0269.)  The district court declined to apply a presumption of materiality in this case because "[t]o date, no such presumption has been applied in this Circuit." (*Id.*)[21]  Prolacto has failed to raise, and therefore waived, this issue on appeal.

Courts that have held that a literally false statement may be presumed to be material have improperly conflated the separate elements of consumer deception and materiality.  *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250-51 & n.9 (11th Cir. 2002).  These elements are separate and

---

[21] Prolacto contends on appeal that this Court has previously applied a presumption of materiality for literally false statements, citing to *Alpo Petfoods, Inc. v. Ralston Purina Co.*, 720 F. Supp. 194 (D.D.C. 1989).  Even a cursory review of *Alpo Petfoods* shows there was "ample evidence" of materiality presented there.  *Id.* at 209.

should not be combined because a statement can be false but have no material effect on a consumer.  "The plaintiff [in a false advertising case] must establish materiality even when [] the court finds that the defendant's advertisement is literally false. … The materiality requirement is based on the premise that *not all deceptions affect consumer decisions*."  *Id.* at 1250 (emphasis added).  Other courts have also rejected the purported "presumption" of materiality.  *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 312 n.10 (1st Cir. 2002); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001); *Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, 790 F. Supp. 2d 965, 989 & n.47 (S.D. Iowa June 10, 2011); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 813 (D. Minn. 2011); *Hackett v. Feeney*, No. 2:09-cv-02075-RLH-LRL, 2011 U.S. Dist. LEXIS 101485, at *15-16 (D. Nev. Sept. 8, 2011); *Filtration Solutions Worldwide, Inc. v. Gulf Coast Filters, Inc.*, No. 08-0102-CV-W-FJG, 2010 U.S. Dist. LEXIS 2130, at *61 (W.D. Mo. Jan. 12, 2010).

Prolacto cites *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996) and *U-Haul Intern., Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir. 1986).  Those decisions improperly conflated the elements of deception and materiality and failed to recognize that a false deceptive statement may not be material or actionable. Prolacto also cites *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3 24 (1st Cir. 2000), but in that case, the court did not reach the issue of

materiality.  Prolacto's reliance on *Riggs v. Mgmt Corp. v. Columbia Partners, LLC*, 966 F. Supp. 1250 (D.D.C. 1997) is also unavailing, because the court there heard "copious testimony" to support a finding of materiality.  *Id.* at 1269.  None of Prolacto's cases are on point.

Even if the district court had applied a presumption of materiality, the presumption is rebuttable in any event, and PLM rebutted it with evidence showing that the challenged statements did not play any role in consumer decisions regarding whether or not to purchase PLM's product.  (APP0413-418, APP0500-501.)

### 4.     The District Court Properly Determined That Prolacto Did Not Prove the Element of Injury

The district court correctly found that Prolacto proffered no credible evidence that the allegedly false statements used by PLM had, or would have, any real impact on Prolacto in any way and that Prolacto failed to establish the requisite element of injury to prevail on a false advertising claim.  (APP0500-501; *see also* APP0413-418.)  Prolacto points to no such evidence.  Thus, the district court correctly entered judgment in favor of PLM on Prolacto's false advertising claim and this Court should affirm.

### G. The District Court Correctly Determined That Prolacto Was Not Entitled to Money Damages

The district court properly granted summary judgment in favor of PLM on Prolacto's claim for monetary recovery on all of its counterclaims. The district court's summary judgment order prohibits Prolacto from recovering actual damages, any profits of PLM, statutory damages, and/or attorneys' fees and costs. (APP0287-289.)

### 1. Prolacto's Failure to Move for Summary Judgment on Its Claim For Money Damages Is Irrelevant

Prolacto argues that the district court denied Prolacto's claim for money damages on its false advertising claim "because Prolacto did not affirmatively move for summary judgment on the damages issue." (App. Br., pp. 61.) This is mistaken.

PLM moved for summary judgment on the issue of monetary recovery, among other issues. Prolacto "simply ignore[d]" all of PLM's arguments that Prolacto was not entitled to recover any money, which made up "roughly one third" of PLM's motion for summary judgment; therefore, Prolacto conceded the issue and partial summary judgment was entered prohibiting Prolacto from recovering money on its counterclaims. (APP0287.)

Prolacto fails to offer a single case citation or any other authority for the proposition that a party can ignore all or part of a motion for summary judgment

58

and proceed to trial on the claims at issue in the summary judgment motion.

Prolacto's position is directly contradicted by Federal Rule of Civil Procedure 56 and *Rodriguez v. Chertoff*, No. 07-5398, 2008 U.S. App. LEXIS 9611, at \*2 (D.C. Cir. Apr. 28, 2008); *Tarpley v. Greene*, 221 U.S. App. D.C. 227, 684 F.2d 1, 6-7 (D.C. Cir. 1982). Having failed to raise any arguments in opposition to PLM's summary judgment motion on the issue of monetary recovery in the first instance, Prolacto has waived all of these arguments on appeal. *See, e.g.*, *Formella v. Brennan*, 817 F.3d 503, 512 (7th Cir. 2016); *Ames v. Nationwide Mut. Ins. Co.*, 760 F.3d 763, 771 (8th Cir. 2014); *Jenkins v. County of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (per curiam); *Brookshire v. C.F. Sauer Co.*, 63 Fed. App'x. 736, 736 (4th Cir. 2003); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995).

Prolacto also argues that the district court erred in granting PLM summary judgment on its affirmative defenses. Prolacto is mistaken again. The district court did not grant summary judgment in favor of PLM on its affirmative defenses, nor did PLM move for summary judgment on its affirmative defenses. Rather, each parties' affirmative defenses were adjudicated by the district court after trial, as reflected in the district court's findings of fact and conclusions of law. (APP0467-472, APP0493.)

59

### H.     The District Court Correctly Determined That Prolacto Had No Right to a Jury Trial

Prolacto wrongly contends that the district court erred in striking Prolacto's jury demand.

A district court's denial of  jury trial is reviewed *de novo*. *Osborn v. Griffin*, 865 F.3d 417, 460 (6th Cir. 2017); *Palmer v. Valdez*, 560 F.3d 965, 968 (9th Cir. 2009); *Entergy Ark., Inc. v. Nebraska*, 358 F.3d 528, 540 (8th Cir. 2004); *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 827 (4th Cir. 1994).

Federal courts consistently have held that, in Lanham Act cases in which only injunctive relief is available, no right to a jury trial exists.  *See, e.g.*, *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010); *AstraZeneca LP v. Tap Pharm. Products, Inc.*, 444 F. Supp. 2d 278, 288 (D. Del. 2006); *Sanijet Corp. v. Jacuzzi Inc.*, No. Civ.A. 3:01CV0897-P, 2002 WL 1398546, at *2 (N.D. Tex. Feb. 14, 2002); *Empresa Cubana del Tabaco v. Culbro Corp.*, 123 F. Supp. 2d 203, 209-10 (S.D.N.Y. 2000); *Ringling Bros.-Barnum & Bailey Combines Shows, Inc. v. Utah Div. Travel. Dev.*, 955 F. Supp. 598, 601-02, 605 (E.D. Va. 1997); *see also Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 299 F.3d 643, 648 (7th Cir. 2002) (citing *United States v. Louisiana*, 339 U.S. 699, 706 (1950); *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 374-75 (1979)); *Arakawa v. Reagan*, 666 F. Supp. 254, 260 & n.9 (D.D.C. 1987).

60

As explained above, the district court correctly denied Prolacto from recovering any monetary relief.  Thus, because Prolacto was limited to recovering injunctive relief, the district court correctly struck Prolacto's demand for a jury trial.

## VII.  CONCLUSION

Prolacto's appeal should be denied.

Dated:  October 27, 2017

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     *_/s/ Laura L. Chapman_*

LAURA L. CHAPMAN

Attorneys for Plaintiffs-Appellees

61

# CERTIFICATE OF COMPLIANCE

1.    Brief of Appellees complies with the type-volume limit of Fed. R. App. P.

32(a)(7)(B) because, excluding the parts of the document exempted by Fed.

R. App. P. 32(f):

[X]    this document contains 12,892 words, or

[ ]    this brief uses a monospaced typeface and contains [*state the number

of*] lines of text.

2.    This document complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

[X]    this document has been prepared in a proportionally spaced typeface

using Microsoft Word 2010 in size 14 point Times New Roman font;

or

[ ]    this document has been prepared in a monospaced typeface using

[*state name and version of word processing program*] with [*state

number of characters per inch and name of type style*].

Dated:    __October 27, 2017__          ___/s/ Laura L. Chapman___
                                        *Counsel for Plaintiffs-Appellees*

62

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2017, I caused this **BRIEF OF**

**APPELLEES** to be electronically filed with the Clerk of the Court for the U.S.

Court of Appeals for the District of Columbia Circuit by using the appellate

CM/ECF system.  All participants are registered CM/ECF users: and will be served

by the CM/ECF system.

Martin B. Schwimmer
Lauren B. Sabol
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601
(914) 288-0022 (Telephone)
(914) 288-0023 (Facsimile)

Martin B. Schwimmer
Schwimmer@leasonellis.com
Lauren B. Sabol
Sabol@leasonellis.com

*Counsel for Appellants*

John L. Welch
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 646-8000 (Telephone)
(617) 646-8646 (Facsimile)

John L. Welch
jwelch@wolfgreenfield.com

*Counsel for Appellants*

Dated:    October 27, 2017              /s/ Laura L. Chapman
                                        *Counsel for Plaintiffs-Appellees*

63